# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

**Sep 06, 2023**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of | )  |
|---|---|
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| Apple iPhone seized on June 21, 2022 and booked as | ) |
| Sacramento Police Department Evidence Item | ) |
| SA1172344-006 | ) |

Case No.   2:23-sw-0912 CKD

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A-1.

located in the _____EASTERN_____ District of _____CALIFORNIA_____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |
| 18 U.S.C. § 922(g) | Unlawful Possession of Firearm & Ammunition |

The application is based on these facts:

See Affidavit of FBI Special Agent Matthew Weissenborn

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/

*Applicant's signature*

Matthew Weissenborn, FBI Special Agent

*Printed name and title*

Sworn to before me telephonically.

Date:   September 6, 2023 at 4:07 pm

*Judge's signature*

City and state:   Sacramento, California

Hon. Carolyn K. Delaney, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT OF FBI SPECIAL AGENT MATTHEW WEISSENBORN IN SUPPORT OF APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, Special Agent Matthew Weissenborn, being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant to search the items identified in Attachments A-1 and A-2, for the things described in Attachment B. More specifically:

    a.  Data from a cellular phone attributed to **GABRIEL ERASMO CABRERA** that was recovered on June 21, 2022, pursuant to a probation search and subsequently searched pursuant to a state search warrant (hereinafter "**PHONE 1**") further identified in Attachment A-1; and

    b.  Data from a cellular phone attributed to **GABRIEL ERASMO CABRERA** that was recovered on January 26, 2023, pursuant to a probation search and searched pursuant to terms of probation (hereinafter "**PHONE 2**") further identified in Attachment A-2.

2.  I submit that there is probable cause to believe that the data described in Attachments A-1 and A-2 contain evidence of violations of 21 U.S.C. § 841(a)(1) (possession of a controlled substance with intent to distribute), 18 U.S.C. § 922(g)(1) (felon in possession of firearms and ammunition), and 18 U.S.C. § 922(g)(3) (unlawful user of a controlled substance in possession of firearms and ammunition). The evidence to be searched for and seized is more fully described in Attachment B.

3.  I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) assigned to the Sacramento Field Office and have been so employed since April 2013. I received training at the FBI Academy in Quantico, Virginia from October 2012 to March 2013. During my tenure with the FBI I have worked in the areas of white collar crime, counterterrorism, counterintelligence, and violent crime. I have served as a Supervisory Special Agent at FBI Headquarters in Washington, D.C., and presently serve as a

1

firearms instructor, in addition to working violent crime. Before joining the FBI, I practiced law for approximately five years.

4.  I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

5.  This affidavit is based upon my own personal knowledge but also the knowledge and/or reports of other law enforcement officers and/or third parties (for example, the Technical Engineer for Winchester Ammunition). Where I describe statements made by other people (including other law enforcement officers), information contained in reports and/or other documents or records in this affidavit, that information is described in sum, substance, and relevant part.

6.  This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## STATEMENT OF PROBABLE CAUSE

***Gabriel Cabrera has previously been convicted of a felony offense and is therefore prohibited from possessing firearms and ammunition.***

7.  On February 1, 2022, Cabrera was convicted of felony possession for sale, or purchase for purposes of sale, a controlled substance, in violation of California Health & Safety Code § 11351 (Superior Court of California, County of Sacramento, Case No. 21FE002911). He was placed on formal probation for a period of two years. His Order of Probation specified that he not knowingly have in his possession any firearm or ammunition and that he was advised and provided with a firearms prohibition packet.

8.  On September 20, 2022, Cabrera was convicted of felony possession of a controlled substance for sale, in violation of California Health & Safety Code § 11351 (Superior Court of California, County of Sacramento, Case No. 22FE010264). He was placed on formal probation for a period of two years.

9. On March 1, 2023, Cabrera was convicted of felony inflicting corporal injury, in violation of California Penal Code § 273.5(a). He was sentenced to 364 days jail and 2 years' probation.

10. Cabrera is currently on three separate terms of probation through Sacramento County pursuant to Sacramento Superior Court case numbers 21FE002911, 22FE010264 and 23FE001364.

   a. The order of probation from case 21FE002911, which Cabrera signed on March 1, 2022, includes the following language:

      i. The defendant not knowingly own, purchase, receive or have in his possession or under his/her custody or control, any firearm, ammunition or reloading ammunition . . . Defendant advised and provided with firearms prohibition packet.

      ii. P.C. 1546 searchable – Defendant shall submit his/her person, place, property, automobile, electronic storage devices, and any object under his/her control, including but not limited to cell phone and computers, to search and seizure by any law enforcement officer or probation officer, any time of the day or night, with or without a warrant, with or without his/her presence or further consent. Defendant being advised of his/her constitution and statutory rights pursuant to Penal Code section 1546 et seq. in this regard, and having accepted probation, is deemed to have waived same and also specifically consented to search of his/her electronic storage devices. Defendant shall provide access to any electronic storage devices and data contained therein, including disclosing and providing any and all necessary to conduct a search.

      iii. Do not knowingly use, handle or possess controlled substances of any kind unless lawfully prescribed to you by a licensed medical practitioner.

***Arrest and Subsequent Probation Search Leads to Seizure of Cell Phone
containing videos of Cabrera unlawfully possessing firearms.***

11. On June 20, 2022, after his two-year old daughter was found alone on the
    23rd floor of a hotel in the elevator, Cabrera was found with pills which he
    described as unprescribed Percocet, indicated that on some days he may need
    7-8, that he snorted them and that he was taking a nap. During a search
    incident to his arrest, Cabrera was found to be carrying 78.5 M/30 pills,
    which he indicated were for personal use.

    a. I note that a DEA Drug Fact Sheet, depicting an image of counterfeit
       oxycodone M30 tablets containing fentanyl, indicates that one of the
       common street names for same is "Blues" and that the majority of
       counterfeit pills resemble oxycodone 30mg pills (M30s), but can also
       mimic hydrocodone, alprazolam (Xanax), Adderall, and other
       medications.

12. On June 21, 2022, an officer with the Sacramento Police Department located
    a phone associated with Gabriel Cabrera during a probation search.

13. On July 6, 2022, an officer with the Sacramento Police Department obtained
    a warrant to search the above-referenced phone for all data constituting
    evidence and instrumentalities of possession of a controlled substance for sale
    (Health and Safety Code Section 11351).

14. I reviewed a report from a Sacramento Police Department Officer noting his
    observations of the content in the above-referenced phone. He noted
    observing narcotic sales and firearm related videos from the phone.  Included
    among those observations were the following:

    a. Video taken March 29, 2022, captures a large quantity of light shaded
       blue M/30 pills on a 100 dollar bill next to another large quantity of
       darker shaded blue M/30 pills on a 100 dollar bill. Cabrera is observed
       talking about the difference between the two different shaded M/30
       pills and price of $4.50 for the light blue pills and a price of $7 or $8 for
       the darker blue pills. In particular, Cabrera is noted to state the
       following:

  i. "These mutherf****s right here, I'm letting them go for 4.50. 4.50, personal experience, these hit harder, these hit harder they are just a little bit more white, they hit harder, they're shiny, everything all away around is good about them, just nigga they are fine. These mutherf****s are the ones I've been having. These are nice, they're shiny, they're just bluer. From my experience and other people's experience, these ones hit harder right so it's up to you all. I need to know by the end of tonight what I need to do and who I should f**k with. Give me some input, I'll pull up on a couple of you all, if you want to try some testers for a couple of dollars, but let me know. These ones I'm sell for 8, 7.

b. Video taken March 26, 2022, capturing a plastic baggie containing a large quantity of blue M/30 pills.

c. Video taken on March 31, 2022, capturing a plastic baggie containing a large quantity of blue M/30 pills.

d. Video taken on April 1, 2022, capturing a bottle of Farmapram (Xanax) and the pills being poured onto a counter with no less than 30 pills visible on the countertop.

e. Video taken on April 1, 2022, and mapping at Motel 6 on Northgate Boulevard, capturing a hand picking up large pieces of a white powdery substance off a 100 dollar bill. One of the videos contains Gabriel Cabrera's tattoo confirming it is Cabrera handling the white powdery substance, which the officer recognized as cocaine.

f. Video taken on May 5, 2022, capturing a plastic baggie containing a large quantity of blue M/30 pills.

g. Video taken June 1, 2022, capturing a plastic baggie containing a white substance being weighed on a scale with Cabrera's voice.

h. Video taken on May 30, 2022, capturing Cabrera holding two handguns and pointing them at a mirror. The officer noted a bed in the background that had a unique colored blue comforter.

i.  Video taken on June 1, 2022, mapping at 2831 Crested Street, West Sacramento, CA, capturing Cabrera holding a black/silver handgun with an extended magazine over a bed with a blue comforter. The report notes that M.H. lives at said address.

j.  Video taken June 3, 2022, mapping at 2831 Crested Street, West Sacramento, CA, capturing Cabrera counting money using a money counter.

k.  Video taken June 4, 2022, capturing Cabrera holding a rifle and a black handgun wrapped with a red bandana.

l.  Video capturing Cabrera standing in front of a mirror filming himself holding an Anderson Manufacturing AM-15 rifle. The officer observed the same bed with the blue comforter captured in other videos, and based on the room and bed, observed the video was taken at 2831 Crested Street, West Sacramento, CA.

m. Video taken on May 30, 2022, capturing Cabrera firing five rounds out of a black handgun with an extended magazine.

n.  Video taken on May 30, 2022, capturing M.H. firing five rounds out of a silver/black handgun.

o.  Video taken on June 1, 2022, capturing Cabrera firing a handgun out the window of a vehicle while driving.  Cabrera fires approximately 12 rounds out of the window while driving. The officer observed street signs passing by as the vehicle was driving and Cabrera was recklessly firing the handgun without looking at where he was shooting.

p.  Video taken June 1, 2022, capturing M.H. firing a handgun out of the passenger window of a vehicle while the vehicle was moving.

15. I note that on December 9, 2022, M.H. was arrested for shooting at an inhabited dwelling/vehicle/etc., assaulting a person with a semi-automatic firearm and attempted murder. M.H. is now deceased.

***Traffic stop leads to seizure of suspected M30 pills, Xanax bars, cocaine, and Apple iPhone from Cabrera.***

16. On January 25, 2023, Cabrera was the subject of a criminal threat related call, but was not located at that time.

17. On January 26, 2023, two Sacramento County Sheriff's deputies conducted a traffic stop of a white Infiniti SUV bearing California license plate 9BXD630. Based on a criminal threats related call from the day prior, the deputy knew that Cabrera was probable cause arrestable, was possibly driving a White Infiniti SUV and was possibly armed. The deputy confirmed the plate matched to a vehicle possibly related to Cabrera. In addition, the reporting deputy observed that the vehicle had front window tint and he was unable to see who was driving the vehicle or how many people were inside the vehicle.

    a. Based on a records search, the vehicle in question was transferred to L. Cabrera, who I believe to be Gabriel Cabrera's mother, days prior to the traffic stop.

18. The reporting deputy knew that Cabrera was on formal searchable probation. Cabrera was the sole occupant of the vehicle. Cabrera's Order of Probation from his September 20, 2022 conviction in case 22FE010264 specifically included the following language:

    a. The defendant not knowingly own, purchase, receive or have in his possession or under his/her custody or control, any firearm, ammunition or reloading ammunition . . . Defendant advised and provided with firearms prohibition packet.

    b. P.C. 1546 searchable - Defendant shall submit his/her person, place, property, automobile, electronic storage devices, and any object under his/her control, including but not limited to cell phone and computers, to search and seizure by any law enforcement officer or probation officer, any time of the day or night, with or without a warrant, with or without his/her presence or further consent.

    c. Defendant being advised of his/her constitutional and statutory rights pursuant to Penal Code section 1546 et seq. in this regard, and having

accepted probation, is deemed to have waived same and also specifically consented to searches of his/her electronic storage devices.

d. Defendant shall provide access to any electronic storage devices and data contained therein, including disclosing and providing any and all necessary to conduct a search.

e. Do not knowingly use, handle or possess controlled substances of any kind unless lawfully prescribed to you by a licensed medical practitioner.

19. Deputies conducted a search of Cabrera's person and the Infiniti. A black scale and an Apple iPhone were found in the vehicle. The cellular telephone was displaying a GPS route. Cabrera claimed the phone did not belong to him and would not provide the password even though the phone was part of his probation conditions.

20. Deputies found approximately 100 blue M30 pills (believed to be Oxycodone), 14 suspected Xanax pills, approximately 9 grams (with packaging) of suspected powder cocaine, and $2,590 in cash on Cabrera's person. Deputies arrested Cabrera and transported him to the Sacramento County Main Jail.

***Seized cell phone contains more videos of Cabrera unlawfully possessing firearms.***

21. Law enforcement subsequently searched the cellular telephone recovered during the January 26, 2023, using in part, a forensic extraction.

22. I reviewed reporting from a detective that searched the phone, which report indicated the following:

a. During a manual search of Cabrera's cell phone, the detective determined a large quantity of the phone's content was related to various criminal activity, including evidence of Cabrera's unlawful possession of a firearm and negligent discharge thereof.

b. The reporting indicated the phone included the following videos:

i.  Video taken on January 7, 2023, with Cabrera holding the same loaded 40SW caliber Polymer 80 "ghost" Glock style pistol. In the video Cabrera cycles the firearm repeatedly ejecting live 40SW rounds.

ii.  Video taken on January 7, 2023, with Cabrera holding a pistol that appeared identical while demonstrating the laser/light attachment.

iii.  Video taken on January 7, 2023, with Cabrera speaking to the camera. Cabrera is easily identifiable. Cabrera is wearing a unique blue/white tie dye "Doggystyle" hooded sweatshirt.

iv.  Video taken on January 8, 2023 at 1:56 a.m. with Cabrera holding the same loaded 40SW caliber Polymer 80 "ghost" Glock style pistol. In the video Cabrera is in a parking lot. The detective recognized the parking lot as belonging to the Fair Oaks apartment complex on Fair Oaks Boulevard where Cabrera had threatened a female victim prior. The apartment complex is a large 100+ unit apartment complex just west of another 100+ unit apartment complex (the Aspire Sacramento apartment complex). Cabrera's beard and unique blue/white tie dye "Doggystyle" hooded sweatshirt are both visible. Cabrera uses the phone camera's flashlight to illuminate the video as he discharges the firearm four (4) times. Cabrera sets the firearm on the front passenger seat of a vehicle and a portion of his "LONG LIVE STAXX" tattoo is visible on his right hand."

1.  The detective indicates in the report that videos on the phone appeared consistent with a subject displaying a firearm's capabilities to potential buyer(s). Based on his training and experience prospective buyers of personally manufactured firearms are primarily concerned about the pistol's reliability and will often request verification that the firearm works. Cabrera appeared to demonstrate this by firing the pistol between two very densely populated apartment complexes.

c. The detective that reviewed the phone searched dispatched events and located a "Shots fired within 15 minutes" event on January 8, 2023 at 2:00 a.m. A caller from the Aspire Sacramento Apartment complex indicated she heard four gunshots approximately two minutes prior. Deputies responded to the call for service but did not locate anything suspicious.

d. The detective was advised by employees of the Fair Oaks apartment complex that a resident had collected possibly related shell casings and office employees were retaining the casings for the detective to collect.

e. Per report, one of the areas from which the resident collected four 40 caliber shell casings appeared identical to where Cabrera fired his pistol in the video recording on January 8, 2023. Another witness that reported hearing the shooting was played the audio from the shooting video on Cabrera's phone and the witness indicated it sounded exactly like the audio. Another witness also reported hearing gunshots and observed four casings at the same location (the resident thought he heard five rapid fire shots, but only found four casings; he also indicated it was between approximately 11pm or midnight).

f. Per report, among the four 40 caliber casings collected where Cabrera had fired his pistol four times were: A) three stamped with "WMA 18 40S&W"; and B) one stamped with "WIN 40S&W." Per report, these were identical to the stampings visible on ammunition on Cabrera's cell phone taken on January 1, 2023.

  i. On July 5, 2023, I communicated with the Technical Engineer for Winchester Ammunition. He advised me that the shellcases with "WMA 18 40 S&W" headstamps were manufactured in Winchester's Oxford, MS plant and loaded in 2018. He further advised me that the shellcase with a "WIN 40 S&W" headstamp was manufactured in either Winchester's Oxford, MS or East Alton, IL plant. Therefore, all four shellcases travelled interstate.

**Cabrera has repeatedly indicated that he is an unlawful user of controlled substances**

23. In addition to Cabrera's March 29, 2022 statement about his personal experience with blue M/30 pills, Cabrera has on multiple occasions indicated he uses controlled substances.

24. During a January 26, 2020, interaction with law enforcement, Cabrera claimed ownership of approximately 441 grams of marijuana and indicated it was for personal use.

25. During a mirandized statement on January 21, 2021, Cabrera claimed ownership of "weed" and that he used Xanax.

26. Cabrera's Order of Probation dated February 1, 2022, indicates that Cabrera shall participate in Alcohol and Drug Rehabilitation Programs under the direction of the probation officer.

27. On June 20, 2022, after his two-year old daughter was found alone on the 23rd floor of a hotel in the elevator, Cabrera was found with pills which he described as unprescribed Percocet, indicated that on some days he may need 7-8, that he snorted them and that he was taking a nap. During a search incident to his arrest, Cabrera was found to be carrying 78.5 M/30 pills, which he indicated were for personal use.

28. Cabrera's Order of Probation dated September 20, 2022 indicates that he shall participate in an evidence based outpatient drug/alcohol intervention program under direction of the probation officer.

29. During a probation search on December 16, 2022, Cabrera indicated he had M/30 pills on his person and that they were for personal use.

30. During the vehicle stop on January 26, 2023, Cabrera disclosed that he had cocaine and Xanax on his person, and during a search Cabrera was also found to be carrying blue M 30 pills. One of the deputies reported, however, that based on his training and experience, he did not believe the large number of pills were for personal use.

31. In summary, per reports:

a. In 2020 and 2021, Cabrera claimed ownership of unlawful controlled substances and claimed use of same in 2020, and use of Xanax in 2021.

b. In March of 2022, Cabrera indicated he had personally used one of the M/30 pills that he was selling.

   i. Videos taken May 30, June 1, and June 4, 2022, depict Cabrera discharging and/or handling firearms.

c. On June 20, 2022, Cabrera was found carrying M/30 pills which he indicated were for personal use.

d. On December 16, 2022, Cabrera again indicated that he had M/30 pills on his person for personal use.

   ii. Videos taken January 7 and January 8, 2023, depict Cabrera discharging and/or handling firearms.

e. Based on a subsequent law enforcement interview, a reported victim of Cabrera's violence indicated she thought he was on drugs on or about January 5, 2023, when he pointed a gun at her head.

***A reported victim of Cabrera's violence reported that Cabrera had firearms and that she suspected he was on drugs***

32. On January 26, 2023, during a law enforcement interview, a reported victim of Cabrera's violence (V1) reported that she knew Cabrera had guns because she had personally seen them. She also reported that approximately three weeks prior she thought Cabrera was on drugs and he started to nod off while watching children. She further reported that approximately three weeks prior Cabrera said he was going to shoot a neighbor and her child, then pointed a gun directly at V1's head and said: "If it's not them, it's you." V1 took this as a threat to her safety and ran to her bedroom, after which Cabrera followed her and punched her approximately five times in the face then choked her for approximately 15 seconds.

## CELLULAR PHONES, ELECTRONIC STORAGE,
## AND FORENSIC ANALYSIS

33. As described in Attachment B, this application seeks permission to search for items in data from two cellular telephones. The warrant applied for would authorize the seizure of electronic storage media, electronically stored information from that storage media, and potentially, the copying of electronically stored information from that storage media, all under Rule 41(e)(2)(B).

34. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only files that might serve as direct evidence of the crimes described in the warrant, but also for forensic electronic evidence that establishes how the phones were used, the purpose of their use, who used them, when they were used, and/or where they were used.

35. Information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of criminal conduct under investigation, thus enabling the United States to establish and prove each element, or alternatively, to exclude the innocent from further suspicion. Information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage

media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information that can indicate when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

36. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

37. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

38. *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying **PHONE 1** and **PHONE 2** and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-

14

assisted scans of the entire medium, that might expose many parts of the internal memory to human inspection in order to determine whether it is evidence described by the warrant. The authorization of this examination extends to any agency or party working at the direction or request of the FBI, regardless of the jurisdiction or physical location of the agency or party.

## **CONCLUSION**

39. I submit that this affidavit supports probable cause for a warrant to search **PHONE 1** and **PHONE 2**, which are described in Attachments A-1 and A-2, and to seize the items described in Attachment B.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

/s/
_____
MATTHEW WEISSENBORN
FBI Special Agent

Sworn and Subscribed to me telephonically,
on September 6, 2023,

_____
Hon. CAROLYN K. DELANEY
United States Magistrate Judge

Approved as to form:

_____
JUSTIN LEE
Assistant United States Attorney

## ATTACHMENT A-1

*Property to be searched*

Data from a cellular phone attributed to **GABRIEL ERASMO CABRERA** (including all memory cards immediately associated/attached with the device such as subscriber identification module (SIM) cards and memory cards) that was recovered on June 21, 2022, pursuant to a probation search and subsequent state search warrant **(PHONE 1)**. The phone is a dark gray Apple iPhone with a brown phone case that was booked as Sacramento Police Department Evidence Item SA1172344-006.

## ATTACHMENT B

*Property to be seized*

1.     All records relating to violations of Titles 21 U.S.C. § 841(a)(1) (possession of a controlled substance with intent to distribute), 18 U.S.C. § 922(g)(1) (felon in possession of firearms and ammunition), and 18 U.S.C. § 922(g)(3) (unlawful user of a controlled substance in possession of firearms and ammunition), including but not limited to:

     a.     Images and videos depicting the possession of controlled substances with intent to distribute, and possession of firearms, and ammunition, by felons or unlawful users of controlled substances, including associated file data such as location and creation data;

     b.     Writings and audio files relating to the possession of controlled substances with intent to distribute, and possession of firearms, and ammunition, by felons or unlawful users of controlled substances;

     c.     Financial records relating to the unlawful purchase or sale of controlled substances;

     d.     Financial records relating to the purchase, sale or transfer of firearms or ammunition by or to felons or unlawful users of controlled substances;

2.     Evidence of who used, owned, and/or controlled the cellular phones at the time the things described in this warrant were created, edited, sent, received or deleted, such as saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messages, photographs, and video;

3.     Evidence indicating the cellular phone user's state of mind as it relates to the crimes under investigation;

4.     Records of or information about Internet Protocol addresses used by the cellular phones;

5.     Records of or information about the cellular phone user's Internet activity, including caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

6.     Contextual information necessary to understand the evidence described in this attachment.

       7.     Geolocation information.

This warrant authorizes a review of electronically stored information seized or copied pursuant to this warrant in order to locate evidence described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple iPhone seized on June 21, 2022 and booked as<br>Sacramento Police Department Evidence Item<br>SA1172344-006 | )<br>)<br>)<br>)<br>)<br>) | Case No.   **2:23-sw-0912 CKD** |

## SEARCH AND SEIZURE WARRANT

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____EASTERN_____ District of _____CALIFORNIA_____
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A-1.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____September 15, 2023_____
*(not to exceed 14 days)*

☐ in the daytime  6:00 a.m. to 10 p.m.       ☑ at any time in the day or night as I find reasonable cause has been
established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
_any duty magistrate judge_____ .
*(name)*

☐  I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  _September 6, 2023 at 4:06 pm_____        *Carolyn K. Delaney*
*Judge's signature*

City and state:    _Sacramento, California_____        Hon. Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

Subscribed, sworn to, and returned before me this date.

_____
*Signature of Judge*          *Date*